**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID CODELL PRIDE, JR.,
     *Plaintiff-Appellant*,

   v.

M. CORREA; LEVIN, Dr.; T. OCHOA,
Warden; SANTIAGO, Dr.,
     *Defendants-Appellees*.

No. 10-56036

D.C. No.
3:07-cv-01382-
BEN-JMA

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
December 6, 2012—Pasadena, California

Filed July 16, 2013

Before: Harry Pregerson, John T. Noonan,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Pregerson

# SUMMARY[*]

### Prisoner Civil Rights

Reversing the district court's dismissal of a prisoner's claim for injunctive relief concerning medical treatment, the panel held that the prisoner's claim was not encompassed by the pending class action *Plata v. Brown*, No. C01-1351 THE, which seeks systemic reform of medical care in California prisons.

The panel held that where a California prisoner brings an independent claim for injunctive relief solely on his own behalf for specific medical treatment denied to him, *Plata* does not bar the prisoner's claim. In this case, plaintiff essentially alleged that his treating physician prescribed him medical treatment, which was subsequently denied, without justification, by a committee of non-treating medical providers. The panel held that plaintiff could bring his independent claim for injunctive relief because it was not duplicative of the *Plata* litigation or addressed conclusively in the *Plata* Stipulation. On remand, the panel instructed the district court to determine whether the claim for injunctive relief was moot as to the Chief Medical Officer given that the prisoner was transferred to another prison.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Johanna S. Schiavoni (argued), Jacobs Schlesinger & Sheppard LLP, San Diego, California, for Plaintiff-Appellant.

Vickie P. Whitney (argued), Deputy Attorney General, Sacramento, California; William N. Frank, Deputy Attorney General; Thomas S. Patterson, Supervising Deputy Attorney General; Jonathan L. Wolff, Senior Assistant Attorney General; Kamala D. Harris, Attorney General of California, Los Angeles, California, for Defendants-Appellees.

**OPINION**

PREGERSON, Circuit Judge:

Plaintiff-Appellant David Pride is a California state prisoner. In an action brought under 42 U.S.C. § 1983, Pride claims that Defendants-Appellees, officials and employees of Calipatria Prison, violated his Eighth Amendment rights by acting with deliberate indifference towards his serious medical needs. He seeks damages and injunctive relief concerning his own individual medical treatment. The district court dismissed Pride's claim for injunctive relief on the ground that Pride's claim is already being provided for in the class action *Plata v. Brown*, No. C01-1351 THE, pending in the Northern District of California. We have jurisdiction under 28 U.S.C. § 1291. We reverse the district court's dismissal of Pride's claim for injunctive relief. We hold that because Pride's claim for injunctive relief concerns only his individual medical care, his claim is not already encompassed

in the *Plata* litigation, which seeks systemic reform of medical care in California prisons.[1]

## I.

In his *pro se* complaint, Pride alleges that he has a permanent shoulder injury from prior gunshot wounds. He alleges that his shoulder was shattered by bullets and could not be fully mended. His gunshot injuries allegedly cause him significant pain and difficulty sleeping, and prevent him from exercising. Pride contends that he also has an old sports injury that causes his knee to slide out of joint, resulting in pain and swelling.

The complaint further alleges that while Pride was a prisoner at Pelican Bay State Prison, a prison doctor examined him and prescribed him a double mattress and a knee brace for his injuries. Once Pride was transferred to Calipatria State Prison, he sought the same treatment from his treating physician, Dr. Santiago. Pride alleges that after conducting a medical examination, including a specific examination of his shoulder and knees, Dr. Santiago issued a chrono[2] prescribing Pride knee braces and an egg crate

---

[1] We address the district court's order granting Defendants' motion for summary judgment in a concurrently-filed memorandum disposition. The memorandum disposition addresses Pride's claim for damages.

[2] "A 'chrono' is a collection of informal notes taken by prison officials documenting medical orders." *Akhtar v. Mesa*, 698 F.3d 1202, 1205 n.1 (9th Cir. 2012).

mattress.[3]  Pride alleges, however, that a Chrono Committee reviewing Dr. Santiago's chrono improperly denied the prescribed medical treatment.  Pride asserts that because of the denial of medical care he is in constant pain and is unable to sleep.

After exhausting his administrative remedies, Pride filed his *pro se* complaint under 42 U.S.C. § 1983 for denial of adequate medical care against two alleged members of the Chrono Committee, Defendants M. Correa, a nurse, and Dr. Levin, the Chief Medical Officer of Calipatria State Prison.[4] Pride requested injunctive relief to prevent Defendants from denying him medical treatment and accommodations.

## II.

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure solely on the ground that Pride's claim for injunctive relief "cannot be brought independently of the *Plata* class-action."   The assigned magistrate judge recommended denying Defendants' motion.   Defendants objected to the recommendation, repeating the same argument.  The district court declined to adopt the magistrate judge's recommendation.  Instead, the district court construed Defendants' motion as a Rule

---

[3] The egg crate mattress was prescribed in lieu of a double mattress, which was against Calipatria State Prison policy.  Pride contends that he agreed to accept the egg crate mattress as an alternative to a double mattress.

[4] Pride also sued Dr. Santiago and the then-Warden of Calipatria State Prison, T. Ochoa.  For the reasons discussed in the concurrently-filed memorandum disposition, we affirm the district court's grant of summary judgment in favor of Defendants Santiago and Ochoa.

12(b)(1) motion to dismiss "for lack of jurisdiction over the subject matter because the claim is currently pending as a class action."  So construed, the district court granted Defendants' motion and dismissed Pride's claim for injunctive relief.  Pride timely appealed.[5]

## III.

Our review of the district court's dismissal under Rule 12(b)(1) or Rule 12(b)(6) is *de novo.  Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004); *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1381 (9th Cir. 1988). Whether we construe Defendants' motion as one under Rule 12(b)(6) or as a facial attack on subject matter jurisdiction under Rule 12(b)(1), all factual allegations in Pride's complaint are taken as true and all reasonable inferences are drawn in his favor.  *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005); *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).[6]

---

[5] Pride did not include the district court's order granting Defendants' motion to dismiss in his notice of appeal.  Defendants, however, had notice and an opportunity to address the dismissal of Pride's claim for injunctive relief because the parties fully briefed the issue.  *See, e.g.*, *Meehan v. County of Los Angeles*, 856 F.2d 102, 105–06 (9th Cir. 1988); *Le v. Astrue*, 558 F.3d 1019, 1022–23 (9th Cir. 2009).  Thus, we find that the dismissal of Pride's claim for injunctive relief is properly before us.

[6] A Rule 12(b)(1) jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A jurisdictional challenge is factual where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  Because Defendants brought their motion under Rule 12(b)(6), it is clear that any challenge they made to Pride's claim for injunctive relief was facial.

## IV.

The district court dismissed Pride's claim for injunctive relief for lack of subject matter jurisdiction on the ground that Pride "asserts interests that are already being provided for by [the *Plata* court]." We conclude that the district court erred in dismissing Pride's claim for injunctive relief.

## A.

We have not previously addressed the availability of injunctive relief for individual defendants in the context of the *Plata* litigation. But we have addressed similar issues in *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979) and *Krug v. Lutz*, 329 F.3d 692 (9th Cir. 2003).

In *Crawford*, we addressed whether a district court may properly dismiss an individual complaint "because the complainant is a member in a class action seeking the *same relief*." *Crawford*, 599 F.2d at 892 (emphasis added). We held that a district court may dismiss "those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief." *Id.* at 893. But a district court may not "dismiss[] those allegations of [the] complaint which go beyond the allegations and relief prayed for in [the class action]." *Id.*; *see also Frost v. Symington*, 197 F.3d 348, 359 (9th Cir. 1999) (remanding for a determination of whether a pending "class action involv[es] the same issues raised by [plaintiff]").

In *Krug*, we considered when class action consent decrees concerning prison conditions bar an individual claim for relief. *Krug*, 329 F.3d at 696. There, "consent decrees had been entered regarding a broad category" of conduct at the

prisons. *Id.* We held that an individual defendant is permitted to litigate an "independent constitutional action" where the "specific issues" raised "[have] not already been addressed conclusively by the decrees." *Id.*

Following the principles of *Crawford* and *Krug*, to determine whether an individual inmate's claim for injunctive relief is duplicative of *Plata*, we must first identify the relief sought and obtained by *Plata* concerning medical care.

**B.**

The class in *Plata* "consists of all prisoners in the custody of the [California Department of Corrections and Rehabilitation ("CDCR")] with serious medical needs, except those incarcerated at Pelican Bay State Prison." Stip. ¶ 8. The *Plata* defendants are the Governor of California, Director of Finance, Youth and Adult Correctional Agency Secretary, Director of Corrections, and Deputy Director, Health Care Services Division. *Plata* was filed in 2001, and despite years of litigation, "serious constitutional violations in California's prison system . . . remain uncorrected." *Brown v. Plata*, 131 S. Ct. 1910, 1922 (2011) (discussing the history of *Plata*).

In 2002, a "Stipulation for Injunctive Relief" was approved by the *Plata* district court and filed in the United States District Court for the Northern District of California (the "*Plata* Stipulation").[7] Pursuant to the *Plata* Stipulation,

---

[7] Both parties cite to the *Plata* Stipulation and neither party questions its authenticity. Accordingly, we take judicial notice of the *Plata* Stipulation as well as related *Plata* court documents. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if

the CDCR was required to implement the following practices and procedures: (1) hire medical staff; (2) staff registered nurses at emergency clinics 24 hours a day; (3) implement certain protocols and systems including protocols for inter-institution transfers and for treatment; and (4) provide special diets for patients with end-stage liver and kidney failure. Stip. ¶¶ 5-6. After the "State failed to comply with [the stipulated] injunction," the district court appointed a receiver to oversee remedial efforts in the California prisons. *Plata*, 131 S. Ct. at 1926.

In August 2009, the district court found that the *Plata* litigation's remedial efforts including the *Plata* Stipulation and the receivership had failed to remedy the constitutional violations in California prisons. *Coleman v. Schwarzenegger*, CIV S-90-0520 LKK JFM P, 2009 WL 2430820 (E.D. & N.D. Cal. Aug. 4, 2009), at *25–26. The district court thus requested that a three-judge court convene to consider issuing a prisoner release order. *Id.* Pursuant to the Prison Litigation Reform Act, a prisoner release order, which includes any type of order "that has the purpose or effect of reducing or limiting the prison population,"[8] can only be ordered by a three-judge court. 18 U.S.C. § 3626(a)(3)(B), (g)(4). The Chief Judge of the United States Court of Appeals for the Ninth Circuit granted the request for the three-judge court. *Coleman*, 2009 WL 2430820, at *27.

---

those proceedings have a direct relation to matters at issue." (internal quotations and citation omitted)).

[8] The three-judge court also addressed a case related to *Plata*, *Coleman v. Brown*, Case No. Civ. S-90-0520 LKK JFM, pending in the United States District Court for the Eastern District of California. *Coleman* concerns prisoners in the California prison system with serious mental illness.

The three-judge court determined that: (1) crowding was the primary cause of the constitutional violations in *Plata*; and (2) no other relief, other than a prison release order, would remedy the constitutional violations. *Id.* at *29–115. The court found that "prior orders for less intrusive relief had failed to remedy the unconstitutional denial of adequate medical . . . health care to prisoners." *Id.* at *29. The court emphasized that "defendants utterly failed to comply with the implementation schedule" called for in the *Plata* Stipulation. *Id.* at *5. The court concluded that "until the problem of overcrowding is overcome it will be impossible to provide constitutionally compliant care to California's prison population." *Id.* at *62. The court ordered that defendants reduce the prisoner population to 137.5% of the design capacity of the state's prisons within two years. *Id.* at *75.

The United States Supreme Court affirmed the three-judge prison release order. *Brown v. Plata*, 131 S. Ct. 1910 (2011). The Court held, "[a]t one time, it may have been possible to hope that the[] violations [in *Plata*] would be cured without a reduction in overcrowding. A long history of failed remedial orders, together with substantial evidence of overcrowding's deleterious effects on the provision of care, compels a different conclusion today." *Id.* at 1939.

Currently, the parties in *Plata* continue to litigate the three-judge prison release order. On April 11, 2013, the three-judge court denied defendants' motion to vacate or modify the order. It re-asserted that defendants must reduce the California prison population to 137.5% of design capacity. *Coleman v. Brown*, 2:90-CV-0520 LKK JFM P, C01-1351 THE, 2013 WL 1500989 (E.D. & N.D. Cal. Apr. 11, 2013). The *Plata* defendants have appealed the three-judge court order.

In this case, Defendants assert that the *Plata* Stipulation demonstrates that Pride's individual claim for injunctive relief is already being provided for in the *Plata* litigation. First, Defendants point to Paragraph 7 of the *Plata* Stipulation, which provides:

> The parties understand and agree that the 602/inmate-grievance procedure[9] is an integral part of the provision of essential medical care and is integrated into the Policies and Procedures. Accordingly, the parties agree that, in the first instance, all complaints regarding medical care to an individual inmate, except those requiring urgent medical care, shall be submitted to defendants after utilizing the inmate grievance procedure. If after the appeal has reached the third director's level of review and all administrative relief has been exhausted, or the [CDCR] has not responded to the inmate's appeal within 30 days at the Director's level of review and plaintiffs contend that the grievance process has failed to adequately address the problem, *plaintiffs may bring the medical care concern to the attention of defense counsel*, who shall respond in writing within 30 days. Plaintiffs' counsel may also contact the Chief Medical Officers at the institutions to inquire about the care furnished to particular inmates on a monthly basis.

---

[9] When a prisoner files an administrative appeal concerning an action by the CDCR, typically the appeal is filed using a "602" form.

> Defendants' counsel shall be notified about such contacts.

Stip. ¶ 7 (emphasis added).

Nothing in Paragraph 7 addresses injunctive relief for specific medical treatment denied to individual inmates. Rather, Paragraph 7 generally provides that individual inmates, except those requiring urgent medical care, shall first utilize the inmate grievance procedure. Thereafter, Paragraph 7 provides a permissive procedure for an inmate to bring a medical care concern to the attention of defense counsel, i.e., counsel to the CDCR.

Second, Defendants rely on Paragraph 30 of the *Plata* Stipulation, which they claim provides for a mechanism to obtain medical care for an inmate if plaintiffs' counsel believes that an individual inmate is not receiving constitutionally-mandated care. That provision, however, merely provides a procedure for the parties to follow if the *Plata* defendants fail to meet their systemic reform goals pursuant to the Stipulation. Stip. ¶ 30. The procedure requires that the plaintiffs "notify defendants of the perceived problems," and that the *Plata* defendants respond within 30 days. *Id.* Paragraph 30 then instructs the parties to negotiate, and to rely on court experts where necessary, to resolve remaining conflicts. *Id.*

Last, the parties dispute the meaning of Paragraph 29. The plain language of Paragraph 29 indicates that the *Plata* Stipulation may only be used in other proceedings for a limited purpose. In the "Enforcement" section in Paragraph 29, the *Plata* parties agreed:

> The Court shall have the power to enforce the Stipulation through specific performance and all other remedies permitted by law. Neither the fact of this stipulation nor any statements contained herein may be used in any other case or administrative proceeding, except defendants, [CDCR], or employees thereof reserve the right to use this Stipulation and the language herein to assert issue preclusion and res judicata in other litigation seeking class or systemic relief.

Stip. ¶ 29. While Paragraph 29 permits the *Plata* defendants to use the Stipulation to "assert issue preclusion and res judicata in *other litigation seeking class or systemic relief*," it does not similarly allow use of the Stipulation in other litigation seeking individualized relief. *Id.* ¶ 29 (emphasis added).

We conclude that the *Plata* class seeks systemic reform of medical care in the California prisons for inmates with serious medical needs. The three-judge court determined that overcrowding was the primary cause of the systemic constitutional violations, and that no other relief, other than a reduction in the prisoner population would remedy the constitutional violations. *Coleman*, 2009 WL 2430820, at *29–115.

Pursuant to the *Plata* Stipulation, the defendants are required to implement various systemic changes such as increasing medical staff and implementing protocols for the transfer of inmates between prisons. Stip. ¶ 6. But the *Plata* Stipulation does not require individual inmates to seek injunctive relief related to individualized medical treatment

care through its provisions. Thus, similar to the consent decrees in *Krug*, although the *Plata* Stipulation concerns the broad category of medical care, individualized medical care "ha[s] not already been addressed conclusively" by the *Plata* Stipulation. *Krug*, 329 F.3d at 696.

In the context of *Plata*, an individual inmate's claim for injunctive relief is similar to the claims in *Crawford* that we allowed to proceed separately from the class action. In *Crawford*, we upheld the dismissal of the portions of plaintiff's complaint concerning a systemic problem— overcrowding at the prison—because the identical issue was being litigated in a pending class action. 599 F.2d at 893. We reasoned that a district court may decline jurisdiction to "avoid concurrent litigation in more than one forum." *Id.* But we reversed the dismissal of plaintiff's claims for unsanitary conditions, lack of legal resources, and deprivation of visiting privileges because those claims were not addressed by the class action. *Id*. at 892–93.

Individual claims for injunctive relief related to medical treatment are discrete from the claims for systemic reform addressed in *Plata*. Consequently, where an inmate brings an independent claim for injunctive relief solely on his own behalf for medical care that relates to him alone, there is no duplication of claims or concurrent litigation. Thus, we conclude that where a California prisoner brings an independent claim for injunctive relief solely on his own behalf for specific medical treatment denied to him, *Plata* does not bar the prisoner's claim for injunctive relief. *See, e.g., Burnett v. Dugan*, 618 F. Supp. 2d 1232, 1237 (S.D. Cal. 2009); *Moore v. McDonald*, 2:10-CV-3457 KJM KJN P., 2012 WL 1131933, at \*1–2 (E.D. Cal. Mar. 31, 2012); *Burnett v. Faecher*, CV 08-2745-PSG (MLG), 2009 WL

2007118, at \*5 (C.D. Cal. July 6, 2009); *Tillis v. Lamarque*, C 04-3763 SI, 2006 WL 644876, at \*8–9 (N.D. Cal. Mar. 9, 2006).

To preclude an inmate from proceeding on a claim for injunctive relief for his individual medical care would lead to unwarranted delay. An inmate who successfully proved that prison officials were deliberately indifferent to his serious medical needs would be powerless to petition the courts for redress of the violation until *Plata*, which has been pending now for twelve years, has been fully resolved. Defendants fail to proffer any authority for their argument that a discrete, individual claim for injunctive relief may be delayed because a pending class action seeks systemic reform relating to the same general subject matter.

On the other hand, however, a district court may decline to exercise its jurisdiction over a California prisoner's claim seeking *systemic* injunctive relief related to medical care where the allegations and relief sought are duplicative of *Plata*.[10] *Crawford*, 599 F.2d at 892-93; *see, e.g., Gary v. Hawthron*, 06-CV-1528 WQH (PCL), 2007 WL 2781098, at \*2 (S.D. Cal. Sept. 19, 2007); *accord Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1201, 1207–12 (C.D. Cal. 2004). In that situation, the avoidance of concurrent litigation and potentially inconsistent results justifies dismissal.

We turn to whether Pride's claim for injunctive relief is duplicative of *Plata*.

---

[10] In other words, a district court has discretion to decline jurisdiction over an inmate's claim for injunctive relief only after it determines that the claim is duplicative of *Plata*.

## C.

Pride seeks an injunction preventing Defendants from denying him medical treatment and accommodations.[11] There are no references in Pride's complaint to systemic relief for inmates generally. The crux of Pride's claim is that his treating physician prescribed him medical treatment, which was subsequently denied, without justification, by a committee of non-treating medical providers. Like the plaintiffs in *Crawford* and *Krug*, Pride may bring his independent claim for injunctive relief because it is not duplicative of the *Plata* litigation or addressed conclusively in the *Plata* Stipulation. *See Crawford*, 599 F.2d at 892; *Krug*, 329 F.3d at 696.

In dismissing Pride's claim for injunctive relief, the district court adopted the reasoning of *Gary v. Hawthron*, 06-CV-1528 WQH (PCL), 2007 WL 2781098 (S.D. Cal. Sept. 19, 2007). In that case, however, the prisoner's claim for injunctive relief requested "better medical staffing and screening procedures for *all prison inmates*." *Id.* at *2 (emphasis added). The prisoner's claim for injunctive relief thus sought systemic medical care reform, which as *Gary* correctly concluded, is already provided for in *Plata*. Unlike the prisoner in *Gary*, Pride's claim for injunctive relief relates solely to his individual need for medical treatment.

---

[11] Pride suggests that his further request of "preventing . . . any and all retaliations / hardships" stated an independent claim for retaliation. He does not explain, however, how an injunction for retaliation is a separate cognizable claim, instead of part and parcel of his claim for prospective injunctive relief.

Therefore, we reverse the district court's dismissal of Pride's claim for injunctive relief.

### D.

For the first time on appeal, Defendants contend that the issue of injunctive relief is moot because Dr. Levin, the Chief Medical Officer of Calipatria State Prison at the time of this dispute, transferred to another prison. When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). In such circumstances, the inmate's claim is moot because he "no longer is subjected to [the allegedly unconstitutional] policies." *Id.*; *see also Dilley v. Gunn*, 64 F.3d 1365, 1372 (9th Cir. 1995). In this case, however, Defendants contend that the transfer of a prison official, not the inmate, moots the inmate's claim for injunctive relief.

Unlike in the typical scenario where a prisoner is transferred, Defendants do not assert that the allegedly unconstitutional treatment has ceased or is not reasonably expected to recur because of Dr. Levin's transfer. Indeed, Pride contends that he is still being denied his medical treatment. As a practical matter, however, Dr. Levin is sued as an individual, and if he no longer works at Calipatria State Prison, then he is not likely involved in the allegedly ongoing denial of Pride's medical treatment.[12] We note that although Dr. Levin's declaration states that as of October 2008 he

---

[12] Defendants do not assert that Defendant Nurse Correa is no longer employed at Calipatria State Prison. Thus, there is no indication that Pride's claim for injunctive relief is moot as to Defendant Correa.

became the Acting Chief Medical Officer of Centinela State Prison, his declaration does not indicate whether he has a reasonable expectation of returning to Calipatria State Prison.

Accordingly, on remand, the district court shall consider whether Pride's claim for injunctive relief is moot as to Dr. Levin. But if Pride's claim for injunctive relief is moot as to Dr. Levin, Pride shall be given an opportunity to amend his claim for injunctive relief to name the correct officials at Calipatria State Prison who he contends are currently responsible for denying his medical treatment. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (instructing that prisoner "be given an opportunity to amend his complaint" because the prisoner "could cure the deficiencies in his complaint by naming the correct defendants").

## V.

We hold that Pride's claim for injunctive relief concerning his individual medical care is not duplicative of the *Plata* litigation. We therefore reverse the district court's dismissal of Pride's claim for injunctive relief and remand to the district court for further proceedings consistent with this disposition.

**REVERSED** and **REMANDED with directions.**